IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | | |
|---|---|---|
| RANDELL PARKER, as Trustee for MERRILL RAY CHANDLER, | ) ) ) | Civil No.  2:09-CV-00618 BSJ |
| Plaintiff, | ) ) | **MEMORANDUM OPINION & ORDER RE: ATTORNEY'S FEES AND COSTS ON APPEAL** |
| vs. | ) ) | |
| CITIMORTGAGE, INC., JPMORGAN CHASE, N.A.; and JOHN DOES 1 through 5, | ) ) ) ) | |
| Defendants. | ) ) | |

```
┌─────────────────────────────┐
│           FILED             │
│  CLERK, U.S. DISTRICT COURT  │
│  December 12, 2013 (2:18pm)   │
│        DISTRICT OF UTAH       │
└─────────────────────────────┘
```

* * * * * * * * *

On November 13, 2012, the Clerk of the Court docketed the mandate of the court of appeals in the above-captioned proceeding, affirming this court's grant of summary judgment in favor of the defendants and granting CitiMortgage's motion for sanctions.[1]  The court of appeals remanded the matter "to the district court to determine the amount of costs, expenses, and reasonable attorneys' fees incurred by CitiMortgage in defending this appeal and to be paid by the trustee's lawyer," E. Craig Smay.[2]

The court of appeals has long recognized that "excess costs, expenses, or attorney's fees are imposable against an attorney personally for conduct that, viewed objectively, manifests

---

[1](Order and Judgment in *Randell Parker and Merrill R. Chandler v. CitiMortgage, Inc., et al.*, Case No. 11-4131 (10th Cir., October 17, 2012), filed November 13, 2012 (CM/ECF No. 90) ("Order and Judgment").)

[2]The trustee in question, Randell Parker, was plaintiff Chandler's Chapter 7 bankruptcy trustee, appointed in *In re: Merrill R. Chandler, et al.*, Case No. 11-16603 (Bankr., E.D. Cal., final decree entered January 23, 2013).

either intentional or reckless disregard of the attorney's duties to the court" in pursuing a frivolous appeal. *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987).[3]

On November 27, 2012, CitiMortgage filed a Motion for Determination of Attorneys Fees and Costs (CM/ECF No. 92), accompanied by a memorandum in support (CM/ECF No. 93) and the Declaration of J. Derek Kearl (CM/ECF No. 94), with exhibits.  CitiMortgage submits that its reasonable attorneys fees and costs incurred in defending the appeal in this case amount to $62,411.59.  "This figure includes fees reasonably expended on this fee application."[4] CitiMortgage also requests "an award of fees it anticipates will be reasonably incurred in preparing a reply to the Trustee's response to the Motion and, if necessary, preparation for and attendance at a hearing on the Motion, in the amount of $4,277.50."[5]

Mr. Smay objected to CitiMortgage's fee application on several grounds: (1) Marcy

---

[3]In such cases, the court of appeals routinely remands the matter to the district court to determine the *amount* of the award.  *See, e.g., Whittington v. Nordam Group Inc.*, 429 F.3d 986, 1001-02 (10th Cir. 2005) ("we remand to the district court for a determination of reasonable fees incurred in defending Nordam's appeal"); *Hoyt v. Robson Companies, Inc.*, 11 F.3d 983, 985 (10th Cir. 1993) (explaining that "an application for appeal-related attorneys' fees must first be made to our court. Should we decide that it is appropriate to award such fees, we may then remand to the district court to determine an award of reasonable fees"); *Morris by Rector v. Peterson*, 871 F.2d 948, 951 (10th Cir. 1989) ("[T]he determination of the right to sanctions . . . for conduct during an appeal is reserved to the appellate court, although it may allow the trial court to fix the amount of the fees and costs."); *see also In re Villa West Associates*, 146 F.3d 798, 808 (10th Cir. 1998) (explaining that "having ourselves concluded that imposition of a sanction to pay attorney fees was warranted, we remanded to the district court to determine whether there were mitigating circumstances not apparent in the record before us, and whether any amounts claimed were reasonable in light of all factors").
This practice places the district court in the curious position of evaluating the reasonableness of a sanction for an attorney's conduct before another tribunal.

[4](Motion for Determination of Attorneys Fees and Costs, filed November 27, 2012 (CM/ECF No. 92), at 2.)

[5](*Id.*)

Glenn, an attorney who performed work for which CitiMortgage now seeks reimbursement, was not made available for a deposition in Salt Lake City; (2) there is no evidence that CitiMortgage actually paid the requested fees; (3) key portions of the attorneys' descriptions of the work for which fees are requested have been redacted; (4) CitiMortgage's brief on appeal lacked "significant analysis," is "plainly mechanical, associate work," parts of which "do not rise much above the level of boiler plate," and thus "the costs asserted by Defendant for production of the brief are grossly inflated."[6]

CitiMortgage replies that "[h]aving satisfied all elements of the *lodestar* standard, CitiMortgage's fees and costs are presumptively reasonableness [sic],"[7] and argues that Mr. Smay "ignores the detailed description of fees incurred throughout the appeal process" which "carefully describe the tasks performed and the time reasonably expended in defending CitiMortgage against the Trustee's appeal before the Tenth Circuit and to address the Trustee's attorney's sanctionable conduct."[8] CitiMortgage submits that "[s]uch 'verified time statements of [CitiMortgage's] attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.'"[9]

---

[6](Memorandum in Opposition to Demand for Attorney's Fees, filed February 14, 2013 (CM/ECF No. 102) ("Smay Mem."), at 2, 3.) Mr. Smay reiterated these arguments at the evidentiary hearing.

[7](Reply in Support of Defendant CitiMortgage, Inc.'s Motion for Determination of Attorney's Fees and Costs, filed February 22, 2013 (CM/ECF No. 103) ("Reply Mem."), at 1 (emphasis in original).)

[8](*Id.* at 2.)

[9](*Id.* (quoting *Chevron Pipe Line Co. v. Pointe Perry, L.C.*, 2011 U.S. Dist. LEXIS 112092, at *7 (D. Utah, Sept. 29, 2011).) In *Pointe Perry*, Judge Waddoups was applying

(continued...)

**The "Lodestar" Method**

In following the "lodestar" method, "'[t]o determine a reasonable attorneys fee, the district court must arrive at a 'lodestar' figure by multiplying the hours . . . counsel reasonably spent on the litigation by a reasonable hourly rate.'"  *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998) (quoting *Jane L.v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995)).  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  Indeed,

> Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks. . . .  A district court is justified in reducing the reasonable number of hours if the attorney's time records are "sloppy and imprecise" and fail to document adequately how he or she utilized large blocks of time.

*Case*, 157 F.3d at 1250 (quoting *Jane L.*, 61 F.3d at 1510) (citation omitted).  "Once the district court has adequate time records before it,"

> it must then ensure that the winning attorneys have exercised "'billing judgment.'" *Ramos*, 713 F.2d at 553 (quoting *Copeland*, 641 F.2d at 891).  Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended.  *See id.*  Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable.  *See id.* at 553-54 (giving as an example time spent doing background research).

------

[9](...continued)
California law governing contractual attorney's fees awards, and the quoted passage originated in *Horsford v. Bd. of Tr. of Cal. State Univ.*, 132 Cal. App. 4th 359, 396, 33 Cal. Rptr. 3d 644, 673 (2005).  It seemingly continues to be an accurate statement of California law.  *See, e.g.*, *City of Colton v. Singletary*, 206 Cal. App. 4th 751, 785, 142 Cal. Rptr. 3d 74, 102 (2012).

After examining the specific tasks and whether they are properly chargeable, the district court should look at the hours expended on each task to determine if they are reasonable.

*Id.* (quoting *Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983)).[10]  In determining what is a reasonable time in which to perform a given task,

the court should consider that what is reasonable in a particular case can depend upon facts such as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side. Another factor the court should examine in determining the reasonableness of hours expended is the potential duplication of services. "For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." . . .  The court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required.

*Ramos*, 713 F.2d at 554 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)).   "The district court may also reduce the reasonable hours awarded if 'the number [of compensable hours] claimed by counsel include[s] hours that were unnecessary, irrelevant and duplicative.'"  *Case*, 157 F.3d at 1250 (quoting *Carter v. Sedgwick County, Kan.*, 36 F.3d 952, 956 (10th Cir. 1994)).[11]

"The district court is not bound by the opinions of the parties regarding the

---

[10]As the court of appeals explained in *Ramos*, a district court must determine "not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation."  713 F.2d at 553.

[11]*See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 554 n.2, 567 (1986) (taking into account district court fee reductions that included findings of "unnecessary, unreasonable or unproductive" time, and that "the time spent on the particular activity was 'excessive,' or that a less amount of time was 'reasonable'").

Moreover, a party may not recover attorney's fees for tasks easily delegated to a non-professional assistant.  *New Mexico Citizens for Clean Air and Water v. Espanola Mercantile Co., Inc.*, 72 F.3d 830, 835 (10th Cir. 1996).  Thus, in order to prevent paying "a Michelangelo . . . Sistine Chapel rates for painting a farmer's barn," the court must scrutinize the records and weed out non-professional and excessive tasks.  *Id.* (quoting *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983)).

reasonableness of the time they spent on the litigation." *Id.* at 1251.  While the parties may submit affidavits regarding the reasonableness of the hours billed, "[m]ore important is the discretionary determination by the district court of how many hours, in its experience, should have been expended on the specific case, given the maneuverings of each side and the complexity of the facts, law, and litigation." *Id.* at 1250 (citing *Ramos*, 713 F.2d at 554).

The party seeking attorney's fees bears not only the burden of proving that the time expended was reasonable, but what *rate* is reasonable for that particular litigation.  *Id.*  "'The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time.'" *Id.* at 1256 (quoting *Ramos*, 713 F.2d at 555).  A reasonable rate is generally the going rate for an attorney of the same experience level, in the same community, for the same type of work.  *See Jane L.*, 61 F.3d at 1510 ("The setting of a reasonable hourly rate is within the district court's discretion," but should "reflect the 'prevailing market rates in the relevant community.'" (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984))); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989) (stating that the proper rate should be determined "'according to the prevailing market rates in the relevant community'" (quoting *Blum v. Stenson*)).[12]

_____

[12]As *Case* explains,

Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate.  *See Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987) ("*Absent other evidence* of prevailing market rates the district court must rely on all relevant factors known to the court in establishing the reasonable rate to be applied . . . to derive the 'lodestar' figure.")

(continued...)

The court's determination of the "lodestar," that is, the "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley*, 461 U.S. at 433, "produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." *Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (noting that "the lodestar method yields a fee that is presumptively sufficient to achieve" the goal of paying a reasonable attorney's fee)[13]).  Plainly it is the court's lodestar fee determination that is "presumptively valid," *id.* at 1103, not counsel's averments as to what an appropriate lodestar amount may be.

### The CitiMortgage Fee Request

The total amount of attorney's fees claimed by CitiMortgage through November 2012 is **$62,066.00**, together with costs in the amount of **$345.59**, for total fees and costs of **$62,411.59**, representing a combined 200 hours of attorney time billed at the individual attorneys' respective hourly rates, ranging from $295 to $425 per hour.  CitiMortgage counsel averred that "I have personally reviewed the several months of Holland & Hart invoices submitted with this Declaration, line by line and entry by entry," and opined "that the total

---

[12](...continued)
(emphasis added).

157 F.3d at 1257.

[13] The *Perdue* Court clearly embraces the lodestar approach, noting that it "achieved dominance in the federal courts after . . . *Hensley*," and "'[t]he "lodestar" figure has, as its name suggests, "become the guiding light of our fee-shifting jurisprudence."'" 559 U.S. at 551 (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002) (quoting *Burlington v. Dague*, 505 U.S. 557, 562 (1992))).

7

amount of time spent on this matter is reasonable, and that the services performed were

necessary to adequately and successfully represent CitiMortgage in this matter,"[14] with one

exception: counsel recounted that

> after carefully reviewing each billing entry, the total amount of attorney's fees
> claimed by CitiMortgage has been reduced by the attorney's fees determined to be
> unrelated to defending CitiMortgage against the appeal, namely time spent by a
> Holland & Hart paralegal reviewing and obtaining documents from the Salt Lake
> County Recorder's office regarding the subject property in the amount of
> $148.50.[15]

CitiMortgage counsel further opined that:

> I am generally familiar with the hourly billing rates of attorneys in the Salt
> Lake City area. In my opinion, the hourly rates that Holland & Hart has charged
> for professional services in this matter are fair and reasonable considering (a) my
> legal training and level of experience and that of my colleagues at Holland &
> Hart; (b) the nature and length of the firm's professional relationship with
> CitiMortgage; (c) the amount in dispute; and (d) the hourly billing rates charged

---

[14](Declaration of J. Derek Kearl, filed November 27, 2012 (CM/ECF No. 94) ("Kearl
Decl."), at 5 ¶ 13.)  As one commentary explains,

> The exercise of billing judgment does not inevitably require the
> elimination of hours.  In short, counsel may recover for every hour actually
> expended so long as every hour was "reasonably expended."  The Supreme Court
> has rejected the argument that a plaintiff cannot have exercised "billing judgment"
> simply because the plaintiff sought recovery for every hour  counsel expended.
> The Court explained that the exercise of "billing judgment," whether performed
> by counsel or the court, need not result in the reduction of compensable hours, so
> long as the hours *actually* spent were also *reasonably* spent.  The Court noted this
> district court's express finding that all of the claimed hours represented a
> reasonable investment of time.  Because this finding was not clearly erroneous,
> the Court found that counsel, had, indeed, exercised billing judgment in seeking
> fees for all of their hours.

2 Mary F. Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* ¶ 16.02[5][a], at p. 16-28
(rev. ed. 2013) (emphasis in original; footnote omitted) (citing *City of Riverside v. Rivera*, 477
U.S. 561, 569-70 & n.4 (1986)).

[15](*Id.* at 5 ¶ 14.)

by other legal professionals practicing in the Salt Lake City area with similar education, background, and experience and with law firms of comparable size on matters of similar complexity during the relevant time periods. The Holland & Hart billing rates in effect for the appeal were and are consistent with the rates of other such lawyers.[16]

Counsel testified to essentially the same effect at the February 28, 2013 evidentiary hearing, noting in passing other cases in which similar fees—particularly his own law firm's fees—had been found to be reasonable.[17]

### Hours Reasonably Expended

The court has examined the law firm invoices annexed as Exhibits "B" and "C" to the Kearl Declaration to determine whether counsel has exercised the requisite "billing judgment" in identifying the hours reasonably expended in defense of the plaintiff's appeal. In large part, the descriptions of the work performed and the time expended in performing that work, when compared with the court of appeals' docket and the content of particular briefs and other papers filed by CitiMortgage counsel, tend to corroborate counsel's assertion that the time for which compensation is sought was reasonably expended.[18]

---

[16](*Id.* at 5 ¶ 15.)

[17](*See* Transcript of Hearing, dated February 28, 2013 ("Tr."), at 5:5-11:3 (testimony of Mr. Kearl) (citing *Mazuma Capital Corp. v. Bluewater Equip. Rentals, Inc.*, 2009 U.S. Dist. LEXIS 35318 (D. Utah); *Chevron Pipe Line Co. v. Pointe Perry, L.C.*, 2011 U.S. Dist. LEXIS 112092 (D. Utah); *Klein-Becker USA, LLC v. Englert*, 2011 U.S. Dist. LEXIS 103667 (D. Utah)). These cases were also referenced in CitiMortgage's reply memorandum. (*See* Reply Mem. at 11.)

[18]As Mr. Smay points out, time entries that say little more than "REDACTED" prove far more opaque to examination by the court and counsel. All of the redacted time entries—roughly 12.7 hours of them—refer to communications by telephone or email with the same persons, who Mr. Kearl has identified as CitiMortgage in-house counsel. (Tr. at 20:16-18 ("Those communications were with in-house counsel of my client. Those were attorney-client

(continued...)

Several time entries set forth in Exhibits "B" and "C" depart from the "reasonably expended" standard, namely:

*Exhibit B*:

| | | | |
|---|---|---|---|
| Prepare necessary applications to become admitted in the 10th Circuit for purposes of appeal; | 07/06/11 | JDK | 0.30 |
| Review offer provided by opposing counsel to settle matter and review sample notice of appearance and certificate of interested parties; | 07/14/11 | JDK | 0.30 |
| Prepare e-mail correspondence to client regarding potential settlement of this case with the bankruptcy trustee; | 09/08/11 | JDK | 0.30 |
| Prepare e-mail correspondence to bankruptcy trustee in Chandler matter; | 09/12/11 | JDK | 0.40 |
| Telephone conference with bankruptcy trustee regarding potential settlement; | 10/20/11 | JDK | 0.30 |
| Telephone conference with bankruptcy trustee regarding potential settlement and purchase of appeal claim; | 10/20/11 | JDK | 0.50 |
| Prepare email correspondence responding to question regarding settlement from opposing counsel; | 01/23/12 | JDK | 0.20 |
| Conference with secretary regarding preparation of Supplemental Appendix; | 02/29/12 | JDK | 0.20 |
| Advise regarding potential timing of decision; | 08/01/12 | MGG | 0.60 |

[18](...continued)
communications, privileged, confidential." (Mr. Kearl)); Deposition of J. Derek Kearl, dated January 23, 2013, Exhibit 1 to Reply Mem., at 13:3-15:12.)  These redacted entries represent approximately 6.3 percent of the time billed by CitiMortgage counsel, and the court is satisfied with counsel's sworn testimony as to their nature, content and relevance.

| | | | |
|---|---|---|---|
| Respond to JDKearl question regarding timing of argument or decision; | 09/06/12 | MGG | 0.20 |

*Exhibit C:*

| | | | |
|---|---|---|---|
| Communications with paralegal regarding redacting invoices of privileged information; | 11/26/2012 | JDK | 0.1 |

The reasons vary. While admission to the bar of the court of appeals is certainly a prerequisite to defending an appeal in that forum, an attorney's professional licensing and bar admissions are matters of personal qualification for the attorney himself to pursue, apart from the time expended in defense of a particular appeal. Apart from direct participation in a court-mandated settlement conference, counsel's review of an opponent's settlement offer and direct settlement communications among parties and counsel stand apart from the appeal process as well. Discussions with law firm support staff concerning tasks to be performed are part of an attorney's supervisory responsibilities as part of a law firm, in contrast to a professional legal service rendered to a client. An attorney's prognostication as to the *timing* of future action by the court of appeals— however prescient that may prove to be—remains inherently conjectural, and the time involved cannot fairly be said to have been expended in defense of the appeal itself.[19]

Exclusion of the few entries listed above reduces the compensable time expended by Mr. Kearl and Ms. Glenn by only **2.6** and **0.8** hours, respectively.

---

[19]Lawyers may bill their clients for time spent in forecasting *what* the court of appeals may do in a particular case, based upon the available clues concerning the substantive law at issue—statutes, rules, prior court opinions in similar cases, scholarly commentary—and it appears that they did so in this case. Indeed, such forecasts prove essential to many lawyers' legal opinions offered to clients. *See* Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Har. L. Rev. 457, 461 (1897) ("The prophecies of what the courts will do in fact, and nothing more pretentious, are what I mean by the law.").

A discussion between lawyers concerning *when* the court of appeals may act is much more a creature of surmise, footed at best on far more nebulous clues.

This court concludes that some additional attorney time, albeit reasonably expended, should be excluded from that which is compensable under the court of appeals' mandate for another reason: the fees in question were not incurred "in defending this appeal."

After filing his notice of appeal in this case in July of 2011, plaintiff Chandler filed a petition in bankruptcy in the Eastern District of California, and on September 2, 2011, filed a notice of that event with the court of appeals in Denver.  On September 6, 2011, the court of appeals *sua sponte* entered an Order stating that "[i]t appears that the bankruptcy automatic stay is inapplicable to this appeal," and requiring that "within 10 days of the date of this order, the parties to this appeal (appellant Chandler and the appellees) shall advise this court in writing as to their respective positions regarding the applicability of the automatic bankruptcy stay to this appeal."[20]  CitiMortgage counsel expended some time addressing the court of appeals' question, and filed CitiMortgage's response to the question on September 15, 2011.  Thereafter, the court of appeals *sua sponte* entered a further Order on September 22, 2011:

> Upon review of the file in this matter and upon consideration of the parties' responses to the court's order of September 6, 2011, it appears that the automatic bankruptcy stay is inapplicable to this appeal.  However, an issue remains as to whether, in view of the pending Chapter 7 bankruptcy proceeding, appellant Chandler may continue to prosecute this appeal or whether it must be prosecuted by the bankruptcy trustee.
>
> Therefore, within **30 days** of the date of this order, the parties to this appeal (appellant Chandler and the appellees) shall advise this court in writing as to their respective positions regarding appellant's authority and standing to prosecute this appeal.  In addition, to the extent possible, they shall also advise the court of the Trustee's position regarding the continuation of this appeal.
>
> A response from the Trustee would also be helpful to the court in

---

[20](Order, filed September 6, 2011, in *Randell Parker and Merrill R. Chandler v. CitiMortgage, Inc., et al.*, Case No. 11-4131 (10th Cir.).)

determining how this appeal should proceed. Therefore, the court requests the
Trustee (Randell Parker), to file a response to this order, advising the court as to
whether the Trustee intends to prosecute this appeal.[21]

The court of appeals abated proceedings in the appeal "pending responses to this order
and pending further order of this court."[22]  CitiMortgage counsel filed a response to the court of
appeals' second question on October 21st, and on October 24th, the court of appeals entered an
Order requiring an additional response from appellant's counsel:

> On or before November 2, Mr. Chandler shall file an additional response 1)
> advising the court of the outcome of the hearing scheduled for October 26, and 2)
> addressing appellees' assertion, found on pages 2-3 of the joint response, that his
> counsel cannot be appointed to act on behalf of the trustee.  In particular, Mr.
> Chandler shall address in his response whether any conflicts of interest may
> prevent that representation.[23]

---

[21](Order, filed September 22, 2011, in *Randell Parker and Merrill R. Chandler v.
CitiMortgage, Inc., et al.*, Case No. 11-4131 (10th Cir.).)

[22](*Id.*)  On October 7, 2011, Chandler filed a motion to hold his appeal "in abeyance," to
which CitiMortgage counsel filed a response on October 19th.  The next day, the court of appeals
entered two Orders: one reminding the parties that "despite that pending motion, their responses
to the September 22, 2011 order remain due on or before October 24, 2011," and the other
denying Chandler's motion:

> The "Motion to Hold in Abeyance" based on a pending matter before the
> Utah Supreme Court is denied. However, the appeal nevertheless remains abated
> for the reasons stated in the court's orders of September 6, 2011 and September
> 22, 2011 except as otherwise provided.

> In that regard, the bankruptcy stay and standing issues raised in the orders
> issued September 6, 2011 and September 22, 2011 are still pending. In his
> "Response to Order of September 22, 2011," the appellant states that a hearing is
> scheduled in the bankruptcy court on October 26, 2011 that has a bearing on these
> issues. The court *sua sponte* extends the time for responses to its order of
> September 22, 2011 until November 2, 2011.

[23](Order, filed October 24, 2011, in *Randell Parker and Merrill R. Chandler v.
CitiMortgage, Inc., et al.*, Case No. 11-4131 (10th Cir.).)

13

Appellant's counsel responded three days later, and on November 8th, the court of appeals

entered a further Order reciting that "it appears that the Trustee has elected to prosecute

this appeal and that the bankruptcy court has authorized the Trustee to employ attorney E. Craig

Smay as counsel for this appeal," and directing counsel to "file a motion for substitution of

parties . . . requesting that the Trustee be substituted as the appellant in this matter" and "an entry

of appearance as counsel for the Trustee,"[24] which he did on November 14th.[25]

Once the substitution of parties and appearance of counsel were accomplished, the appeal

proceeded to briefing on the merits, and to the outcome with which court and counsel are now

very familiar.  The court of appeals imposed sanctions under 28 U.S.C. § 1927 upon Mr. Smay

for pursuing Chandler's appeal because the panel "cannot find a single, cogent argument to

justify his pursuit of this appeal in the face of our previous decisions, particularly in light of the

fact that he represented the appellants in those cases."[26]

Time reasonably expended by CitiMortgage counsel in reviewing and responding to Mr.

Smay's ill-fated arguments proves to be clearly compensable under the terms of the court of

---

[24](Order, filed November 8, 2011, in *Randell Parker and Merrill R. Chandler v. CitiMortgage, Inc., et al.*, Case No. 11-4131 (10th Cir.).) So it appears that CitiMortgage counsel did not prevail on its assertion that Mr. Smay was not a sufficiently "disinterested person" to be employed as an attorney by a trustee under 11 U.S.C. § 327(a).

[25]For his part, Mr. Smay represented that his motion to substitute the trustee was contested, prompting yet another Order by the court of appeals requiring a further response from CitiMortage counsel.  (Order, filed November 14, 2011, in *Randell Parker and Merrill R. Chandler v. CitiMortgage, Inc., et al.*, Case No. 11-4131 (10th Cir.).)  Counsel filed that response on November 17th, explaining that in fact, the motion to substitute was *not* opposed, and that counsel had asked Mr. Smay "to remove the sentence in the Motion regarding whether Appellees oppose the motion," which he failed to do.

[26](Order and Judgment at 7.)

14

appeals' mandate, including time reasonably expended in establishing that those arguments were indeed frivolous.

Time expended by CitiMortgage counsel in responding to the court of appeals' *sua sponte* queries concerning *procedural* matters not touching upon the substantive merits of the appeal must be distinguished from the time expended "in defending this appeal" grounded upon the frivolous arguments pressed by Mr. Smay on the merits.

Federal courts are courts of limited and carefully defined jurisdiction—a fact to which our court of appeals remains exquisitely sensitive.[27]  In every case, the court of appeals must—and does—satisfy itself that it has the requisite jurisdiction and lawful authority under our Constitution, statutes and rules to proceed to hear and decide the appeal brought before it.[28]  In

---

[27]As the Supreme Court has explained,

> Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.  *See, e.g.*, *Marbury v. Madison*, 1 Cranch (5 U.S.) 137, 173-180, 2 L.Ed. 60 (1803).  For that reason, every federal appellate court has a special obligation to "satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review," . . . .

*Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)).

[28]*See, e.g.*, *Phelps v. Hamilton*, 122 F.3d 1309, 1315-16 (10th Cir. 1997) ("Because this court has an independent duty to inquire into its jurisdiction over a dispute, we proceed to examine this issue *sua sponte*."); *Lopez v. Behles*, 14 F.3d 1497, 1499 (10th Cir. 1994) ("It is well-settled that this court has an independent duty to inquire into its jurisdiction over a dispute, even where neither party contests it and the parties are prepared to concede it."); *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, (10th Cir. 2011) (stating that "'we have an independent duty to examine our own jurisdiction.'" (quoting *Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1274 (10th Cir. 2001))).  The court of appeals routinely abates an appeal where it appears there are procedural deficiencies, *e.g.*, lack of a final judgment, or pursuant to the automatic stay provision of 11 U.S.C. § 362, as arose in this case.

doing so, often the court of appeals propounds *sua sponte* queries to counsel concerning jurisdiction, ripeness, and similar concerns.  When queried, counsel has a duty to respond,[29] entirely apart from the substantive merits of an appeal.

Counsel who has been sanctioned under § 1927 for "multipl[ying] the proceedings in any case unreasonably and vexatiously," and "required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct" should not be further burdened by paying the attorney's fees incurred by opposing counsel in responding to the court of appeals' *sua sponte* procedural queries.  Those fees are incurred at the court of appeals' instance, in aid of satisfying itself that it may proceed at all, regardless of the ultimate merits of the appeal.

Therefore, the time expended by CitiMortgage counsel in responding to the court of appeals' *sua sponte* procedural queries—namely **12.9** hours of Mr. Kearl's billed time—will be excluded from the attorney time compensable under the court of appeals' mandate.  On the other hand, attorney time reasonably expended in responding to Mr. Smay's motions filed during that same period will be included in calculating the fee award pursuant to § 1927.

**CitiMortgage's Claimed Hourly Rates**

As outlined above, a party seeking an award of attorney's fees bears the burden to prove that the claimed hourly rate is reasonable.  Generally, "A reasonable rate is the prevailing market rate in the relevant community."  *Guides, Ltd. v. Yarmouth Group Property Management, Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002) (citing *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir.

---

[29](*See* Tr. at 25:4-14 ("This briefing was, in large part, a response to the Tenth Circuit's order to provide such briefing."(Mr. Kearl)).)

1996)).

To meet this burden, the claimant must:

> produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.  A rate determined in this way is normally deemed to be reasonable and is referred to—for convenience—as the prevailing market rate.

*Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also Lippoldt v. Cole* 468 F.3d 1204, 1224-25 (10th Cir. 2006) (a fee claimant "must provide evidence of the prevailing market rate for similar services by 'lawyers of reasonably comparable skill, experience, and reputation' in the relevant community" (quoting *Blum v. Stenson*)).

Apart from the fairly conclusory averment by CitiMortgage counsel that the claimed hourly rates equate are consistent with those charged "by other legal professionals practicing in the Salt Lake City area with similar education, background, and experience and with law firms of comparable size on matters of similar complexity during the relevant time periods,"[30] CitiMortgage offered very little direct evidence as to the prevailing market rate for attorneys' services in this District outside of counsel's own law firm.

Courts have explained that "[e]xamples of the type of specific evidence that we have held is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community," *Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 245 (4th

---

[30](Kearl Decl. at 5 ¶ 15.)

Cir. 2009), which is consistent with the practice in this District.[31]  Yet CitiMortgage counsel proffered no such affidavits.  Nor did counsel offer any other satisfactory evidence of the prevailing market rate, *e.g.*, bar association or law journal surveys.

The evidence in this record presented by CitiMortgage counsel "does not establish the rates charged were consistent with rates charged by comparably skilled lawyers in the community," *Guides*, 295 F.3d at 1079, and thus CitiMortgage counsel has failed to meet his initial burden to establish the reasonableness of the claimed hourly rates.

"Where a district court does not have before it adequate evidence of prevailing market rates, the court may use other relevant factors, including its own knowledge, to establish the rate." *Id.* (citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243 (10th Cir. 1998)).[32]  Taking into account Mr. Kearl's six to seven years of experience in similar civil litigation, and his

---

[31]In *Plascencia v. City of St. George*, Chief Judge Stewart pointed out that counsel seeking fees for several attorneys' time had submitted "no affidavits from community members declaring a reasonable hourly rate for the attorneys," and noted that "[t]he affidavits submitted by the three attorneys do contain statement from each declaring that they believe their own rates to be reasonable.  These declarations are insufficient for obvious reasons."  (Memorandum Decision and Order Granting in Part and Denying in Part Plaintiff's Motion for Attorney Fees and Billable Costs, filed January 27, 2012, in *Plascencia v. City of St. George*, Civil No. 2:07–CV–2 TS (D.Utah), 2012 WL 256142, at *2 & n.7.)  Judge Stewart concluded that "counsel has failed to meet his burden" as to the attorney's hourly rates and reduced the claimed rates by one-half.  (*Id.* at *2; *see also* Memorandum Decision and Order Awarding Attorneys' Fees, filed May 7, 2009, in *Flitton v. Primary Residential Mortg., Inc.*, Civil No. 2:03-CV-481 DAK (D. Utah), 2009 WL 1357206, at *2.)

[32]For his part, Mr. Smay argued that on the part of CitiMortgage, "there is a substantial failure here to make an adequate proof," (Tr. at 31:21-22), but offered no probative evidence of the prevailing market rate for similar services by lawyers of reasonably comparable skill, experience, and reputation in the relevant community.

acknowledgment in his deposition that this was his first appeal before the Tenth Circuit,[33] as well

as the court's recent experience in evaluating a range of attorney's fees requests made in other

cases, this court concludes that an hourly rate of **$240** will reasonably compensate Mr. Kearl for

the value of his professional services in this case, consistent with what appear to be prevailing

market rates in the community.[34]  Given the far greater experience of both Ms. Glenn and Ms.

Burton in their respective practice specialties (appellate practice and bankruptcy), this court is

satisfied that their claimed rates of **$425** and **$395** are consistent with the prevailing market rates

---

[33](*See* Deposition of J. Derek Kearl, dated January 23, 2013, Exhibit 1 to Reply Mem., at 17:4-19:1.)

[34]For example, in *Plascencia v. City of St. George*, Chief Judge Stewart adjusted the hourly rate to $250 for a civil litigation attorney with fifteen years' experience.  In *Flitton v. Primary Residential Mortgage*, decided in 2009, Judge Kimball adjusted hourly rates for civil litigators of varying experience to a range of $150-$215 per hour.  In *Clayton v. Steinagel*, Judge Sam used hourly rates of $240-$275 as "in line with the prevailing market rates" for civil litigators of eight to thirteen years' experience in calculating the lodestar figure.  (Memorandum Decision, filed December 19, 2012, in *Clayton v. Steinagel*, Civil No. 2:11-CV-379 DS (D. Utah), 2012 WL 6624203, at *1.)

In  *Mazuma Capital Corp. v. Bluewater Equip. Rentals, Inc.*, Civil No. 2:08-CV-00538 DB (D. Utah), the court did award attorney's fees pursuant to contract, apparently based upon counsel's averments that a $275 hourly rate for Mr. Kearl was reasonable.  But the court offered no explicit analysis of either the prevailing market rates or the reasonableness of the time expended.  In *Klein-Becker usa, LLC v. Englert*, Civil No. 2:06-CV-378 TS (D. Utah), Chief Judge Stewart did find that the claimed hourly rates were reasonable based upon claimant counsel's declaration and the lack of contrary evidence from the opposing party, but did not refer to any extrinsic evidence of the prevailing market rates.  Similarly, in *Chevron Pipe Line Co. v. Pointe Perry, L.C.*, Civil No. 2:08-CV-981 CW (D. Utah), Judge Waddoups ruled that "Pointe Perry has not contested the reasonableness of these rates, and this court finds that the rates charged by Plaintiff's counsel"—from $225 to $345 per hour—"are reasonable and consistent with rates customarily charged in the locality for similar services," without further examination of the prevailing market rates.  In *StorageCraft Technology Corporation v. Kirby*, Civil No. 2:08-cv-00921 DN (D. Utah), also cited by CitiMortgage counsel, Judge Nuffer rejected the defendant's sole objection that plaintiff's attorney time records were "imprecise" and relied upon not one, but three declarations by counsel in concluding that the claimed billing rates were reasonable and consistent with prevailing and customary rates in the relevant markets.

in the relevant community at the time this appeal was briefed.

**Fees Incurred in Presenting the Attorney's Fees Request**

"An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application," *Mares*, 801 F.2d at 1205 (citing *Gurule v. Wilson*, 635 F.2d 782, 792 (10th Cir. 1980); *Love v. Mayor of Cheyenne*, 620 F.2d 235, 237 (10th Cir. 1980)), but "not every hour expended on a fee request is necessarily reasonable or compensable." *Id.* CitiMortgage may thus recover attorney's fees reasonably incurred in preparing and presenting its attorney's fees request and in arguing its position at the February 28th pursuant to the court of appeals' mandate.[35]

CitiMortgage counsel extends its request to include fees incurred in *replying* to Mr. Smay's written response to the fee request. As part of CitiMortgage's attorney's fee request, counsel avers that "CitiMortgage also reasonably expects to incur time and expense in December 2012/January 2013 of approximately ten (10) hours and $2,950.00 in fees preparing a reply brief to the Trustee's response to the Motion," and "[i]f a court hearing or oral argument is required on the Motion, CitiMortgage can reasonably expect to incur additional time for preparation (3 hours) and attendance at the hearing (1.5 hours) for an additional $1,327.50."[36]

This court will not award "expected," estimated or anticipated attorney's fees as sanctions under § 1927, or otherwise. Section 1927 authorizes an award of sanctions representing "attorneys' fees reasonably incurred because of" sanctionable conduct—referring to fees *actually*

---

[35]In contrast, time spent by CitiMortgage counsel testifying as a fact witness at the February 28th evidentiary hearing is not compensable as attorney's fees.

[36](Kearl Decl. at 6 ¶¶ 17-18.)

20

incurred.  CitiMortgage counsel having both filed a reply memorandum and appeared at the

February 28th evidentiary hearing, we may infer that CitiMortgage actually incurred attorney's

fees in the process.  Yet absent from the existing record is any supplemental declaration or other

evidence specifically documenting those fees.

Moreover, Mr. Smay has a due process right to file a response to CitiMortgage's fee

request,[37] and so long as his response satisfies the requirements of Fed. R. Civ. P. 11, this court

cannot fairly increase his § 1927 sanctions burden to include the attorney's fees incurred by

CitiMortgage in replying to his satisfactory, rules-compliant response.

**The Lodestar Calculation**

"'A court will generally determine what fee is reasonable by first calculating the

lodestar—the total number of hours reasonably expended multiplied by a reasonable hourly

rate—and then adjust the lodestar upward or downward to account for the particularities of the

suit and its outcome.'"  *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012) (quoting

*Phelps v. Hamilton*, 120 F.3d at 1131).

Taking into account the adjustment to hours expended and the hourly rate as explained

above, CitiMortgage's lodestar calculation looks like this:

| | | | | | | |
|---|---|---|---|---|---|---|
| Marcy G. Glenn | 22.4 hours | x | $425/hour | = | $9,520.00 |
| Mona L. Burton | 0.5 hours | x | $395/hour | = | 197.50 |
| J. Derek Kearl | 160.8 hours | x | $240/hour | = | 38,592.00 |
| TOTAL | | | | | $48,309.50 |

---

[37]The opportunity to file a written response to a motion is explicitly acknowledged in this
court's Local Rules.  *See* DUCivR 7-1(b).

The court therefore finds that CitiMortgage's calculated lodestar amount is **$48,309.50** in attorney's fees.

### Downward Adjustment of the Lodestar Amount

Next the court must consider whether a downward adjustment of the calculated lodestar amount would be appropriate in this case.

The court of appeals has stated that it is not enough "for a court to simply 'eyeball a fee request and cut it down by an arbitrary percentage.'" *Zinna v. Congrove*, 680 F.3d at 1242 (quoting *Browder v. City of Moab*, 427 F.3d 717, 723 (10th Cir. 2005)). Rather, a court should "determine what fee is reasonable by first calculating the lodestar—the total number of hours reasonably expended multiplied by a reasonable hourly rate—and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome." *Id.* (quoting *Phelps v. Hamilton*, 120 F.3d at 1131).

Despite the fact that CitiMortgage *prevailed* on the merits of the appeal, Mr. Smay finds CitiMortgage's brief on appeal to be wanting in some respects:

> Defendant's brief provides no analysis why, under the Utah statute, a trust deed which separates the right to foreclose from the debt (which is sold in all securitizations) is not a "nullity." *Carpenter v. Longan*, 83 U.S. 271, 275 (1972); *Bangerter v. Poulson*, 663 P.2d 100, 101 (Utah 1983); *Dugan v. Jones*, 615 P. 2d 1239, 1243 (Utah 1980); *Donaldson v. Grant*, 49 Pac. 779, 781 (Utah 1887); *Smith v. Jarman*, 211 Pac. 962, 967 (Utah 1922). The brief is, in fact, simply a "me too," citing earlier cases. It is plainly mechanical, associate work, without significant analysis to support it.[38]

Mr. Smay thus appears to suggest that some downward adjustment of the lodestar amount is

---

[38](Smay Mem. at 3.) Mr. Smay expresses a similar view of the court of appeals' Order and Judgment: "The decision in this matter simply adopts the unanalyzed position of other cases that under the trust deed in issue, MERS, as 'nominee,' could convey a right to foreclose despite a specific statute and plenary case law to the contrary." (*Id.*)

appropriate in this case to reflect a lack of novelty and complexity.[39]

There is a "'strong presumption' that the lodestar figure is reasonable," *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. at 554, "but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id. Perdue* instructs that "'the lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee,'" *id.* at 553 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986)), and that "the novelty and complexity of a case" generally may not warrant an adjustment

> because these factors "presumably [are] fully reflected in the number of billable hours recorded by counsel." . . . We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."

*Id.* (quoting *Delaware Valley Citizens' Council*, 478 U.S., at 566).

It is true that CitiMortgage counsel's argument on appeal largely made reference to prior Tenth Circuit rulings without adding anything new into the mix, but did so because the two issues raised by Mr. Smay on his appeal in this case had been decided squarely against him in those prior rulings:

> "*First*, did CitiMortgage have the authority to foreclose under the Trust Deed? *Second*, did the subsequent transfer and securitization of the Note deprive CitiMortgage of its authority to foreclose?" Aplee. CitiMortgage's Br. at 12. We also agree with CitiMortgage that this court and the Utah Court of Appeals "have repeatedly and unequivocally resolved [these questions] against the Trustee." *Id.*
>
> The deed of trust signed by Mr. Chandler named MERS as the beneficiary

---

[39]Indeed, Mr. Smay posits that "[h]alf the price asserted would be excessive." (*Id.*)

23

of the trust deed as a nominee for the lender and its successors and assigns with the right to foreclose and sell the property.  The fact that MERS assigned its interest under the trust deed to CitiMortgage does not change the fact that "[t]his language [in a deed of trust] appears to give [the nominee] the right to foreclose on behalf of not only the lenders but also the lender's successors and assigns." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011).  The Utah Court of Appeals reached the same conclusion in *Commonwealth Property Advocates, LLC v. Mortgage Electronics Registration System, Inc.*, 263 P.3d 397, 402 (Utah Ct. App.), *cert. denied*, 268 P.3d 192 (Utah 2011).  As the nominee under the trust deed, CitiMortgage has the right to foreclose and sell the property.

There is likewise no merit to the trustee's argument that the subsequent transfer and securitization of the note deprives CitiMortgage of its authority to foreclose. We considered and rejected this argument in *Commonwealth*, 680 F.3d at 1204-05, which in turn relied on the Utah Court of Appeals' decision in *Commonwealth*, 263 P.3d at 399 & n.2, 402-04.[40]

Other Tenth Circuit panels have reached the same conclusion, even absent Mr. Smay's

participation.  *See, e.g.*, *Burnett v. Mortgage Electronic Registration Systems, Inc.*, 706 F.3d

1231, 1237-38 (10th Cir. 2013); *Tadehara v. Ace Securities Corp. Home Equity Loan Trust*

*Series 2007-HE4*, 492 Fed. Appx. 834, 838-39 (10th Cir. 2012); *see also Commonwealth Prop.*

*Advocates, LLC v. U.S. Bank Nat'l Ass'n*, — P.3d —, 2011 WL 6091684 (Utah Ct. App., Dec. 8,

2011).

The court of appeals imposed sanctions on Mr. Smay precisely because his appeal lacked

novelty and complexity.  Indeed, the panel could not "find a single, cogent argument to justify his

pursuit of this appeal in the face of our previous decisions, particularly in light of the fact that he

represented the appellants in those cases," warranting its finding that his appeal was indeed

---

[40](Order and Judgment at 5-6.)

frivolous.[41]  That same lack of novelty or complexity cannot now serve as a justification for a downward adjustment in the calculated lodestar amount.

**Costs Incurred on Appeal**

As part of the § 1927 sanctions award, CitiMortgage counsel also seeks reimbursement for copying charges in the amount of **$335.49** for copies of the brief and appendix, and **$10.10** in PACER search charges, these costs having been advanced by counsel.[42]  Mr. Smay does not dispute these expenses, and this court does not discern any reason why they should not be allowed.

In light of the foregoing,

**IT IS HEREBY ORDERED** that pursuant to the mandate of the court of appeals in this case, defendant CitiMortgage Inc. is hereby awarded sanctions pursuant to 28 U.S.C. § 1927 against the trustee's counsel, Mr. E. Craig Smay, individually, in the amount of  **$48,309.50** in attorney's fees and **$345.59** in costs.

DATED this 12th day of December, 2013.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

---

[41](Order and Judgment at 7.)

[42](Kearl Decl. at 6 ¶16.)

25